---

(11 Misc. Rep. 218.)

### In re SPRATT'S WILL.

(Surrogate's Court, New York County. January, 1895.)

WILLS—UNDUE INFLUENCE.

    On April 24th testatrix executed her will, which all the facts and circumstances showed was her free act. One L., her nephew, learning on May 25th that a will had been executed, and no provision made for him, immediately went to the office of his attorney, and caused him to come to testatrix's house the same day to prepare a will. The will was prepared and executed in the presence of L., and he was made residuary legatee in place of those named in the former will. L. had obtained loans from testatrix, amounting to the greater portion of her personal estate, and had given his notes therefor. *Held*, that the will of May 25th was procured by undue influence.

Application for the probate of the will of Julia Ann Spratt, deceased.

Charles H. Beckett, for the will of April 24.
Robert L. Harrison, for the will of May 25.

FITZGERALD, S. Two papers, each purporting to be a will of Mrs. Julia Ann Spratt, have been presented for probate. The first was executed on April 24, 1893, and the second 31 days after, on the 25th of May. The general scheme of each is the same, except that the residuary estate, which, by the first paper, is given in equal shares to three ladies therein named, in the second is left to William Nelson Le Page, who, under the first will, receives nothing. A trust fund of $3,500, provided for Simon Hazelton in the first, is reduced to $3,000 in the second. The executors, three in number, are the same in each instrument,—one being Le Page, the principal beneficiary named in the second paper. The estate of Mrs. Spratt consists of a house and lot on East Fortieth street,

a quantity of gold coin and bank notes, some United States bonds, and a certain indebtedness of Le Page, the amount of which is in dispute. The whole estate is claimed by the contestants of the last will to be of the value of about $25,000. Mrs. Spratt was a woman of 70 years of age or over. For several years her right side had been paralyzed, and her speech was sometimes affected thereby. She was of a generous nature, inclined to be confiding, but at times she was resolute in expressing her views. Both papers were executed in accordance with the requirements of the statute, when she was possessed of the mental capacity to make a will. The only question for me to decide is that of undue influence, which the beneficiaries under the first will have put in issue in respect of the paper of May 25th. Mrs. Spratt died on the 18th day of October, 1893, about five months after the execution of the paper last in date. She had been for several years in feeble health. None of the legatees and devisees named in either paper are of kin. There can be no doubt that the will of April 24th expressed, uninfluenced, Mrs. Spratt's testamentary wishes at the date of its execution, and that she then not only had no thought of making a provision for Le Page, but that her settled purpose was to give her residuary estate to Mrs. Clara Spratt, Mrs. McGrath, and Mrs. McCandless, of whom she had spoken in most friendly terms, and with a sense of gratitude for their care for and their attention to her during her illness. I am convinced that she was dissatisfied with Le Page, because, in his previous transactions with her, he had gained possession of the larger portion of her personal estate, amounting to nearly $10,000, if not more, and for which she held his notes; and, though there is a pretense that she had received from Le Page security for his indebtedness, as matter of fact it was worthless. The circumstances attending the preparation of the will of April 24th are important to be considered. On the 8th of April, Mrs. Spratt sent for Mr. Ward, an attorney, to come to her residence. He called, and after a brief consultation an appointment was made for the 12th, when he received from her instructions for the provisions of the will. On the 20th he again visited her, with a draft of the instrument, read it to her, and she expressed her satisfaction, except in respect to a minor matter, which she wished to have changed. Mr. Ward took the draft away, wrote the will, and on the 24th came to her residence, bringing with him Mr. Hubbard, also an attorney, to act as the second subscribing witness. The paper was then executed. No person interested in the will was present at either interview, and on the occasion of the execution no one was in the room with Mrs. Spratt, except the subscribing witnesses. All the facts proven in connection with the preparation of the paper show that it was a matter of care and deliberation with her, and that its execution was her free and unconstrained act. At one of her interviews with Mr. Ward she imagined that she saw Le Page passing the house. She expressed apprehension lest it be he, and stated that she did not wish him to know anything about it. Such being the facts in respect to the origin of the will, her relations with the

residuary legatees, and her feelings of aversion to Le Page, the scheme of the first instrument was rational, and one which would be expected under the circumstances. These facts stand in sharp contrast with those attending the preparation of the second paper. On the 25th day of May, 1893, it came to the knowledge of Le Page and his wife that Mrs. Spratt had a month previously executed a will. Though they deny it, I have no doubt that they had learned, either by reading the paper or otherwise, that Le Page had not been named as a legatee, though appointed one of the executors. Immediately he went to the office of Mr. Harrison, his attorney, and made an appointment for him to call at Mrs. Spratt's residence to prepare a will. On that afternoon Mr. Harrison went as requested. From Mrs. Spratt he received the instructions, and he at once wrote the instrument, and it was then duly executed. The whole transaction, from the giving of the directions to Mr. Harrison to the signing of the paper by Mrs. Spratt and the witnesses, was in the presence of Le Page, the party most deeply interested under it, and a part of the time in the presence of his wife. Thus, within a month, the residuary legatees in the first will, for whom Mrs. Spratt had expressed gratitude for their kindness, were disinherited, and Le Page, in respect of whom she desired that he know nothing about the preparation of the first will, was substituted in their place, to inherit the larger part of the estate. Mr. Harrison was not informed by Le Page of the existence of the previous will. His connection with the paper in contest was that of a reputable attorney, acting in good faith, under the belief that he was carrying out Mrs. Spratt's wishes.

The contestants availed themselves of the right, under section 2618 of the Code of Civil Procedure, to examine as witnesses Mr. and Mrs. Le Page. From their testimony, and the facts shown by the documentary evidence produced, Le Page appears in an unenviable light. For several years he had taken advantage of the good nature of a feeble old woman, had obtained loans from her to the amount of nearly $10,000, if not more, without adequate, if any, security. In view of his character, as shown by his own evidence, the procurement of a will in his favor would be a natural sequence of a scheme to cancel his debt to Mrs. Spratt. Le Page's relations to Mrs. Spratt were of such a close and confidential nature that, when all the facts are considered, a presumption of undue influence exerted by him in the procurement of the will was raised, which it was incumbent on him to rebut if the paper is to be admitted to probate. He has not only failed in this, but his testimony on many matters is contradictory. He professed not to remember many facts which he should have recalled, and, with reluctance, admitted others which told against him. His testimony is unworthy of belief when inconsistent with facts otherwise shown in the case. He is confessedly bankrupt, and his effort was to relieve himself from his embarrassments by getting possession by the will of the larger part of Mrs. Spratt's estate. His duplicity is shown by his inducing Mrs. Spratt to begin a collusive action against him for indebtedness to the amount of $13,000, and sug-

gesting facts to be set forth in the declaration; yet he interposed a plea denying the indebtedness. The evidence, oral and written, convinces me that the suit was a scheme devised by him in fraud of his creditors in the proceedings in bankruptcy. So far from removing the presumption of undue influence, his own testimony has strengthened it. If the will is to be sustained as the free act of Mrs. Spratt, it must depend wholly on the testimony of the subscribing witnesses, who saw nothing to lead them to suppose that any unlawful influence was exerted. What occurred between Mrs. Spratt and Le Page on the 25th of May, after his return from Mr. Harrison's office, has not been shown. Mrs. Spratt is dead, and Le Page was not a competent witness to testify to communications between them. But so radical a change in the disposition of the residuary estate within a month cannot be accounted for, in view of Mrs. Spratt's previous declarations, except on the theory of moral coercion, which was easily exerted upon a paralytic, aged woman, who was not allowed to give her instructions to the attorney except in Le Page's presence. It is not necessary to set forth in detail the many facts disclosed by the evidence which show Le Page's ways in his business transactions, and which reflect against his integrity, not only in his relations with Mrs. Spratt, but others. I am convinced that the paper of May 25, 1893, propounded by him, was the result of undue influence, and should be denied probate, and that that of April 24th should be admitted. Present a decree accordingly. Ordered accordingly.